UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | EP-18-CR-02049-DCG |
| | § | |
| LUIS ROBERTO ARROYO, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Luis Roberto Arroyo's ("Defendant") "Motion to Dismiss" (ECF No. 26). Defendant, a citizen of Mexico, was indicated on one count of illegal reentry after removal in violation of 8 U.S.C. § 1326. Defendant moves to dismiss the Indictment on the ground that the prior removal order was invalid and void *ab initio* because the immigration judge that issued the order lacked "jurisdiction" to do so. That is, in turn, because, he says, the charging document in the removal proceeding was deficient as it omitted the date and time of removal hearing. For support, he relies on the Supreme Court's recent opinion in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). For the reasons that follow, the Court DENIES the motion.

## I. BACKGROUND

In 1991, Defendant became a lawful permanent resident of the United States.[1] In 2001, he was convicted for possession of marijuana in an amount greater than 50 pounds but less than 2000 pounds in violation of Section 481.121 of the Texas Health and Safety Code. That conviction triggered removal proceedings.

On June 17, 2002, the Department of Homeland Security ("DHS") served a "Notice to Appear" ("NTA") on Defendant. Pursuant to Section 237(a)(2) of the Immigration and

---

[1] Gov't's Resp., Ex. A, at 3, ECF No. 27-1.

Nationality Act ("INA" or "Act"), as amended, the NTA charged him as removable for having committed an aggravated felony as defined in Section 101(a)(4)(B) of the Act.[2] The NTA did not specify the date and time of his removal hearing, but instead ordered him to appear before an immigration judge in El Paso, Texas ("IJ").[3] The DHS filed the NTA with the Immigration Court in El Paso.[4] On August 3, 2002, that court issued a "Notice of Hearing" ("NOH") containing the date, time, and place of the initial hearing and served it on Defendant.[5] After the hearing date was rescheduled four times at the request of Defendant's counsel, the hearing finally took place in September 2002.[6]

At the hearing, Defendant and his counsel were present.[7] The IJ ordered Defendant removed from the United States, and Defendant waived his right to appeal this order to the Board of Immigration Appeals ("BIA").[8] Subsequently, Defendant submitted an Application for Stay of Removal and a Request for Prosecutorial Discretion, but they were denied.[9] On October 15, 2002, Defendant was removed from the United States to Mexico.

More recently, on July 11, 2018, a grand jury sitting in El Paso, Texas, returned a single-count Indictment (ECF No. 10) charging Defendant with illegal reentry in violation of 8 U.S.C. § 1326. The Government alleges that Defendant was found in this country without permission on

---

[2] *Id.*

[3] *Id.*

[4] *Id.* The date-stamp indicating the NTA's filing is not legible.

[5] Gov't Resp., Ex. B, ECF No. 27-2.

[6] Gov't Resp. at 2–3, ECF No. 27; Gov't Resp., Exs. D–G, ECF Nos. 27-4 – 27-7.

[7] Gov't Resp. at 3. Defendant does not dispute the Government's account of this fact.

[8] Gov't Resp., Ex. I, ECF No. 27-9.

[9] Gov't Resp., Exs. J–L, ECF Nos. 27-10 – 27-12.

June 13, 2018, and that he had previously been removed from the United States on October 15, 2002.[10] On October 23, 2018, Defendant filed the instant motion. Mot. to Dismiss, ECF No. 26. On November 15, 2018, the Government filed its response to the motion, Gov't's Resp., ECF No. 27, and on November 13, Defendant followed by filing his reply, Def.'s Reply, ECF No. 30.

## II. DISCUSSION

Section 1326 is designed to punish an alien who was previously "deported[] or removed" and thereafter was found in the United States without the permission of the Attorney General or the Secretary of the DHS. 8 U.S.C. § 1326; *United States v. Garcia-Ruiz*, 546 F.3d 716, 718 (5th Cir. 2008). Under certain circumstances, an alien who is being prosecuted under § 1326 can assert a challenge to the underlying removal order—provided that he satisfies the three-prong test in § 1326(d). *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658 (5th Cir. 1999); *see also United States v. Cordova-Soto*, 804 F.3d 714, 719 (5th Cir. 2015) (The defendant "must satisfy *all* three prongs.").

Defendant argues that the Government cannot prove that he was previously "removed" as a matter of law. Mot. to Dismiss at 8. In the alternative, he argues that he need not satisfy all prongs of test, and in any event, he satisfies them. *Id.* at 9–10. All this because, he claims, the removal order under which he was removed was "invalid," "void," and/or "void *ab initio*." *Id.* at 1, 2, 8, 10. As to why the order was so, he explains that the NTA in the 2002 removal proceeding omitted the hearing time, and that omission deprived the IJ who issued the removal order of "jurisdiction" and authority to do so. *Id.* at 1.

For support, Defendant leans on 8 C.F.R. § 1003.14 ("Regulation 1003.14"), 8 U.S.C. § 1229(a)(1), and *Pereira*. Regulation 1003.14(a) provides in relevant part: "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed

---

[10] Indictment, ECF No. 10.

with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). "Charging document" means "the written instrument which initiates a proceeding before an Immigration Judge," including an "Order to Show Cause" ("OSC") and an NTA, respectively for proceedings initiated prior to April 1, 1997 and for those initiated thereafter. 8 C.F.R. 1003.13. As we will see, Defendant treats "jurisdiction" as used Regulation 1003.14(a) as "subject matter jurisdiction."

In *Pereira*, the Supreme Court held that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under [Title 8,] section 1229(a)' and therefore does not trigger the stop-time rule" set forth in § 1229b(d)(1)(A). *Pereira*, 138 at 2110–11. Section 1229(a)(1) provides, in pertinent part, "[i]n removal proceedings under section 1229a of this title, written notice (in this section referred to as a "notice to appear") shall be given" to the alien specifying 10 listed categories of information, including "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1); *but see* 8 C.F.R. § 1003.15 (requiring a "notice to appear" to include all of the statutory categories of information, except the time of hearing). Defendant insists that the statutory definition of the NTA, not the regulatory definition applies to the "charging document" in Regulation 1003.14(a).

Although Defendant's specific arguments overlap, they raise the following issues: (A) whether Regulation 1003.14(a) implicates immigration judges' "subject matter jurisdiction" and if so, whether the 2002 removal order was "void" for want of that jurisdiction; (B) whether the 2002 removal proceeding complied with Regulation 1003.14(a) and § 1229(a)(1), even though the NTA omitted the hearing time, and if not, whether the 2002 removal order was invalid; and (C) whether, on the basis of alleged defect as to the prior removal order, the Indictment should be dismissed under § 1326(a) or (d). In the following, the Court addresses each issue in turn.

**A. Regulation 1003.14(a) Does Not Implicate Immigration Judges' "Subject Matter Jurisdiction," and the IJ's Removal Order Was Not Void for Want of Such Jurisdiction.**

Defendant claims that because the NTA failed to state the hearing date and time, "jurisdiction" did not vest under Regulation 1003.14(a). Mot. to Dismiss at 3–4. He concludes that "the IJ lacked authority to issue a removal order," *id.* at 4, and consequently, the 2002 removal order was "invalid" and "illegal," *id.* at 2–3. The Government responds that Defendant forfeited this claim because he personally appeared at the hearing, but failed to assert this claim before the IJ and further affirmatively waived appeal of the IJ's order to the BIA. Gov't's Resp. at 10, 17, 19.

Pressed by this response, Defendant equates "jurisdiction," as the term is used in Regulation 1003.14(a), with "subject matter jurisdiction." Relying on a number of judicial opinions by our sister courts, Defendant insists that the removal order was still void (and void *ab initio*) because "subject matter jurisdiction" cannot be "waived." Def.'s Reply at 11–12 (citing cases); *see also United States v. Romero-Caceres*, No. 1:18-CR-354, 2018 WL 6059381, at *5 n.7 (E.D. Va. Nov. 19, 2018) ("Some courts have taken the position that whether an immigration court is vested with jurisdiction under 8 C.F.R. § 1003.14 is an issue of subject matter jurisdiction, which cannot be waived." (collecting illustrative cases)). In other words, according to Defendant, Regulation 1003.14(a) is "jurisdictional"[11] and therefore, implicates the immigration judges' "subject matter jurisdiction." The Court disagrees.

---

[11] In the context of federal courts, "[t]he term 'jurisdictional' properly applies only to prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) implicating" a court's adjudicatory authority. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–61 (2010); *see also Schacht v. United States*, 398 U.S. 58, 67 (1970) (Harlan, J. concurring) ("I also think the Court might promulgate a rule that expressly provided that untimeliness could not be waived even for 'excusable neglect'—in other words a 'jurisdictional rule.'").

With regard to federal courts, "subject-matter jurisdiction" refers to "the courts' statutory or constitutional *power* to adjudicate" a given type of case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998); *United States v. Morton*, 467 U.S. 822, 828 (1984).[12] When a requirement goes to subject-matter jurisdiction, it may lead to "drastic" consequences, and hence, the Supreme Court has—in recent years—cautioned against lightly attaching the "jurisdictional" label to a rule.[13] *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011); *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). The "drastic" and "untoward" consequences may follow, *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153–54 (2013), because "[s]ubject-matter jurisdiction can never be waived or forfeited," *Gonzalez*, 565 U.S. at 141. The nonwaiver rule, in turn, flows from the limitations imposed by Article III, § 2 of the United States Constitution, and "notions of consent and waiver cannot be dispositive because the limitations serve institutional interests that the parties cannot be expected to protect." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850–51 (1986).

"[W]hether or not it is analytically required," the "nonwaiver rule—a traditional rule in its application to Article III courts," may be extended to a "non-Article III tribunal[]," such as the immigration court, only if the tribunal's subject matter jurisdiction is called into question. *Freytag v. C.I.R.*, 501 U.S. 868, 897–98 (1991) (Scalia J., concurring in part and concurring in judgment); *see also Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 780 (2002)

---

[12] *See also Kontrick v. Ryan,* 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction." (citing U.S. Const., Art. III, § 1)); *Bowles v. Russell*, 551 U.S. 205, 212–213 (2007) ("Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them.").

[13] The Supreme Court has declined to follow one of its prior decisions, characterizing it as a "drive-by jurisdictional ruling[]," *Steel Co.*, 523 U.S. at 89, and overruled another for relying on an "elastic conception of jurisdiction" different from the more limited notion of subject matter jurisdiction, *United States v. Cotton*, 535 U.S. 625, 630 (2002).

("[A]dministrative agencies are not Article III courts."); *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1378, (2018) ("The fact that an agency uses court-like procedures does not necessarily mean it is exercising the judicial power."). And, the question of "subject matter jurisdiction," in the context of an administrative agency, is more appropriately framed as: whether the agency actor, such as the IJ here, lacked statutory authority to act or acted outside the scope of statutory authority. *See City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297–98, 300–01 (2013); *cf. also James v. Gonzales*, 464 F.3d 505, 513 (5th Cir. 2006) (holding BIA lacked statutory authority to order removal, because "only an IJ may enter an order of removal in the first instance" (citing 8 U.S.C. § 1229a(a)(1)-(3))).

Like the federal courts' subject matter jurisdiction, *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) ("The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332."), the immigration judges' authority to adjudicate deportation/removal proceedings springs from the statutes. The Immigration and Nationality Act of 1952 ("INA" or "Act"), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), explicitly and *directly* grants that authority: "An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1) (codifying INA § 240(a)(1), as amended by IIRIRA).[14] That statutory grant of authority is the immigration judges' "subject matter jurisdiction," and it

---

[14] *See also id.* § 1229a(a)(3) ("[A] proceeding under this section shall be the sole and exclusive procedure for determining" inadmissibility or deportability.); *id.* § 1229a(a)(b)(1) ("The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses. The immigration judge may issue subpoenas the attendance of witnesses and presentation of evidence.").

preexisted—long before the predecessor to Regulation 1003.14(a) was promulgated in 1987. *See* INA, § 242, 66 Stat. 209, 8 U.S.C. § 1252 (1952).[15]

So, then, what do we make of the phrase "jurisdiction vests . . ." as used in Regulation 1003.14(a)?

To be sure, "the legal lexicon knows no word more chameleon-like than 'jurisdiction.'" *United States v. Yousef*, 750 F.3d 254, 259 (2d Cir. 2014); *see also Prou v. United States*, 199 F.3d 37, 45 (1st Cir. 1999) ("Judge Learned Hand once wrote that words can be chameleons, which reflect the color of their environment.") (internal quotation marks omitted)). "Jurisdiction" "is a word of many, too many, meanings," *Kontrick*, 540 U.S. at 454 (internal quotation marks omitted), "depending on the context in which it is used," *United States v. Swiss Am. Bank*, 191 F.3d 30, 40 (1st Cir.1999); *see also Brumfield v. La. State Bd. of Educ.*, 806 F.3d 289, 306 (5th Cir. 2015) (noting that Black's Law Dictionary lists four definitions for "jurisdiction" and over three pages of definitions for particular types of jurisdiction).

To appreciate the term's chameleon-like attributes, we need venture no further than to give a cursory look at the neighboring regulations located within the same subpart where Regulation 1003.14 resides. *See* 8 C.F.R. § 1003.19(c)(1) (". . . the Immigration Court having jurisdiction over the place of detention . . . ."); 8 C.F.R. § 1003.14(b) ("When an Immigration Judge has jurisdiction over an underlying proceeding, . . . ."); 8 C.F.R. § 1003.43(h)(1) ("The Immigration Court that last had jurisdiction over the proceedings . . . ."); 8 C.F.R. § 1003.44(f)

---

[15] Section 242 of the INA provided in relevant part: "A special inquiry officer shall conduct proceedings under this section to determine the deportability of any alien . . . . Determination of deportability in any case shall be made only upon a record made in a proceeding before a special inquiry officer . . . ." 66 Stat. 209, 11 U.S.C. § 1252(b) (1952). Likewise, the INA vested in special inquiry officers the authority to conduct "exclusion" proceedings. INA, § 236, 66 Stat. 200, 8 U.S.C. § 1226 (1952). In 1996, the IIRAIRA "consolidated the former exclusion proceeding and deportation proceeding into a 'removal' proceeding." Yale-Loehr & Wada, 1 *Immigration Law and Procedure* § 2.04 (2018).

("An eligible alien shall file . . . with the immigration judge or the Board, whichever last held jurisdiction over the case."); 8 C.F.R. § 1003.14(c) ("Immigration Judges have jurisdiction to administer the oath of allegiance . . . ."); 8 C.F.R. § 1003.35(b)(1)(". . . the Immigration Judge shall have exclusive jurisdiction to issue subpoenas . . . ."); 8 C.F.R. § 1003.42(a) ("Jurisdiction for an Immigration Judge to review an adverse credible fear finding by an asylum officer . . . .").

Further, as the Government points out, the relevant statutes do not use the term "jurisdiction," speak to when or how a removal proceeding before an immigration judge "commences," or recite any "filing" requirement; they are purely the creatures of the regulations. Section 1229a of Title 8, entitled "Removal proceedings," provides that "[a]n alien placed in proceedings under this section may be *charged* with any applicable ground of inadmissibility . . . or any applicable ground of deportability," § 1229(a)(2) (emphasis added). Section 1229, entitled "*Initiation* of removal proceedings," provides: "In removal proceedings under section 1229a of this title, written notice (in this section referred to as a "notice to appear") shall be given" to the alien specifying, *inter alia*, "[t]he charges against the alien" and "[t]he time and place at which the proceedings will be held." § 1229(a)(1)(D), (G); *see also Saqr v. Holder*, 580 F.3d 414, 421 (6th Cir. 2009) (stating that the regulatory term "commence" and the statutory term "initiate" are not synonymous).

So, to ascertain the meaning and effect of the regulatory phrase "jurisdiction vests," it is helpful to take account of the regulatory structure for the administration of the INA that existed around the time when 8 C.F.R. § 3.14, the predecessor to Regulation 1003.14, was promulgated —and § 3.14's regulatory history. *Cf. Martin v. Occupational Safety & Health Review Com'n*, 499 U.S. 144 (1991) ("To put this question in perspective, it is necessary to take account of the unusual regulatory structure established by the [Occupational Safety and Health] Act."); *see also*

*I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 190–91 (1991) (considering, in interpreting an INS regulation, "the text of the regulation, the agency's comments when the rule was promulgated, [and] the operating instructions issued to INS personnel").

At that time, the Department of Justice ("DOJ") administered immigration laws, functioning as a traditional "unitary agency." *Martin*, 499 U.S. 154. In 1952, Congress vested in the Attorney General primary responsibility for administration and enforcement of the INA. *See* INA, § 103(a), 66 Stat. 173–74, 8 U.S.C. 1103(a) (1952); *United States v. Minker*, 350 U.S. 179, 192 (1956). The Attorney General, in turn, delegated his statutory rulemaking, enforcement, and adjudicative powers to his subordinates within the DOJ. The Commissioner of the Immigration and Naturalization Service ("INS"), then an agency within the DOJ, had broad authority to enforce immigration laws and to promulgate regulations deemed necessary for the exercise of that authority. 23 Fed. Reg. 9115, 9117 (Nov. 26, 1958); *Shahla v. I.N.S.*, 749 F.2d 561, 564 (9th Cir. 1984) (Sneed, J., concurring in part). Immigration judges, then known as special inquiry officers, were officers of the INS, *see* Stephen Yale-Loehr & Ronald Wada, 1 *Immigration Law and Procedure* § 2.04 (2018); *see also Marcello v. Bonds*, 349 U.S. 302, 311 (1955) (noting "the special inquiry officer was subject to the supervision and control of officials in the [INS] charged with investigative and prosecuting functions."), who conducted "deportation" proceedings. *See* INA, § 242, 66 Stat. 209, 8 U.S.C. § 1252 (1952); *Johns v. Dep't of Justice*, 653 F.2d 884, 889 (5th Cir. 1981). The BIA, a separate agency within the DOJ, exercised the Attorney General's reviewing authority over immigration judges' deportation orders. 23 Fed. Reg. 9117 (codified as 8 C.F.R. § 3.1); *Johns*, 653 F.2d at 889. In 1983, the Executive Office for Immigration Review ("EOIR") was created as a separate agency within the

DOJ to minimize mission disparities within the INS,[16] and the immigration judges were moved out of the INS and along with the BIA, placed into this new agency insulated from the INS's enforcement functions. 48 Fed. Reg. 8038, 8038–39 (Feb. 25, 1983); 50 Fed. Reg. 51693, 51693 (Dec. 15, 1985); *United States v. Garcia-Martinez*, 228 F.3d 956, 962 (9th Cir. 2000).[17]

Shortly after the EOIR was created, 25 new regulations were proposed in 1985, 50 Fed. Reg. 51693 (Dec. 19, 1985), and finally adopted in 1987, 52 Fed. Reg. 2931 (Jan. 29, 1987). These "rules of procedure" governed all proceedings (unless otherwise stated), including deportation proceedings, before the immigration judges. 52 Fed. Reg. 2931. Among them were 8 C.F.R. § 3.14, as mentioned, the predecessor to Regulation 1003.14. Section 3.14(a), in its entirety, provided: "Jurisdiction vests and proceedings before an Immigration Judge commence when a charging document is filed with the Office of the Immigration Judge except for bond proceedings as provided in 8 CFR 3.18 and 242.2(b)." 52 Fed. Reg. 2937 (codified as 8 C.F.R. § 3.14(a)).

Specifically, the purpose of promulgating § 3.14, and amending, in conformity therewith, certain existing regulations, was to give the EOIR the ability to "ensur[e] optimal scheduling of matters on its hearing calendars" and "full control over the docketing of cases on its heavy calendars"—thereby, to afford the EOIR "the maximum possible time" to address "the

---

[16] *See Operation of the EOIR, Hr'g before the House Subcommittee on Immigration & Claims of the Committee on the Judiciary*, 107th Cong. at 22 (Feb. 6, 2002) (statement of Kevin Rooney, Director, EOIR) ("The functional move of cases from INS to EOIR·was to ensure impartiality in the immigration adjudication context by having cases decided by a different entity than the one that prosecuted them.").

[17] In March 2003, the INS ceased to exist, and its enforcement and service functions were transferred to the Bureau of Immigration and Customs Enforcement, now known as U.S. Immigration and Customs Enforcement (ICE), within the newly-created Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107–296, 116 Stat. 2135 (2002); *United States v. Juarez-Velasquez*, 763 F.3d 430, 435 n.1 (5th Cir. 2014). However, the functions of the EOIR remained under the DOJ. *See* 68 Fed. Reg. 10,349 (March 5, 2003).

substantial number of backlogged cases" and to facilitate "the expeditious hearing of new matters brought before the Immigration Judges." 50 Fed. Reg. 51693; 52 Fed. Reg. 2931. Under the existing regulations, deportation proceedings "commenced by the issuance and service of an [OSC] by the [INS]," 8 C.F.R. § 242.1(a) (1983), and the Service (*i.e.*, the INS) officials had the authority "to *independently* cancel served [OSCs] or terminate proceedings at any time prior to the actual commencement of the hearing." 50 Fed. Reg. 51693 (discussing 8 C.F.R. 242.7(a)) (emphasis added).[18] The agency sought to do away with this practice, in favor of adopting one providing "the certainty of a filed document to control [the EOIR's] docket." 52 Fed. Reg. 2932. Accordingly, it promulgated § 3.14(a), amended § 242.1(a) "to conform to this new rule,"[19] amended § 242.7(a) to "*limit* the Service's ability to cancel an [OSC] to the period prior to its filing with the Office of the Immigration Judge," and amended § 242.7(b) "regarding Service motions to dismiss . . . to become applicable . . . after an [OSC] is filed."[20] 52 Fed. Reg. 2931

---

[18] Then existing § 242.7 provided, in relevant part:

(a) *Cancellation of order to show cause.* Any district director, acting district director, deputy district director, assistant district director for investigations, or officer in charge of an office enumerated in § 242.1(a) of this part may cancel an order to show cause or terminate proceedings *prior to the actual commencement of the hearing* under a served order to show cause provided the officer is satisfied that: (1) The respondent is a national of the United States; (2) The respondent is not deportable under immigration laws; (3) The respondent is deceased; (4) The respondent is not in the United States; or (5) The proceedings were improvidently begun.

(b) Motion to dismiss. *After commencement of the hearing*, any officer enumerated in paragraph (a) of this section may move for dismissal of the matter on the grounds set out under paragraph (a) of this section. . . .

8 C.F.R. 242.7(a), (b) (1983) (emphasis added).

[19] Thus amended, § 242.1 provided in relevant part: "Every proceeding to determine the deportability of an alien in the United States is commenced *by the filing of* an Order to Show Cause with the Office of the Immigration Judge." 52 Fed. Reg. 2939 (codified as 8 C.F.R. § 242.1(a) (1988)) (emphasis added); *cf.* 8 C.F.R. § 242.1 (1983), *supra*.

[20] Thus amended, § 242.7 provided, in relevant part:

-12-

(emphasis added). These regulations and their present-day successors remain largely the same in the relevant aspects. Compare 8 C.F.R. §§ 3.14(a), 242.1(a), 242.7(a), and 242.7(b) (1988) with 8 C.F.R. §§ 1003.14(a), 1239.1(a), 239.2(a), and 1239.2(c) (or, 239.2(a)), respectively.[21]

This regulatory history, in view of the regulatory structure then in place, therefore indicates that § 3.14(a), and by extension, Regulation 1003.14(a), was promulgated *not* to interpret any statute, but to achieve the orderly administration of proceedings, including deportation proceedings, before the immigration judges.[22] The agency called it a procedural rule then, 52 Fed. Reg. 9231, and still does so to this day, *see* 8 C.F.R. ch. V., Subch. A, Pt. 1003, Subpt. C ("Subpart C. Immigration Court—Rules of Procedure").

Importantly, the regulatory history further suggests that the phrase "jurisdiction vests . . . when a charging document is filed" means that the filing event *invokes* the immigration judge's authority over a deportation case and concurrently delimits, to some extent, the Service's (then,

---

    (a) Cancellation of Order to Show Cause. Any District Director, Acting District Director, Deputy District Director, Assistant District Director for Investigations, or Officer-in-Charge of an office enumerated in § 242.1(a) of this part may cancel an Order to Show Cause *prior to jurisdiction vesting with the Immigration Judge* pursuant to § 3.14 of this chapter provided the officer is satisfied that: . . . .

    (b) Motion to dismiss. *After commencement of proceedings pursuant to § 3.14* of this chapter, any officer enumerated in paragraph (a) of this section may move for dismissal of the matter on the grounds set out under paragraph (a) of this section. . . .

52 Fed. Reg. 2940 (codified as 8 C.F.R. § 242.7(a), (b)) (emphasis added); *cf.* 8 C.F.R. 242.7(a), (b) (1983), *supra*.

[21] Sections 242.1(a), 242.7(a), and 242.7(b) have a significant bearing upon the meaning of § 3.14(a) and in turn, Regulation 1003.14(a). It is significant that the administrative notices of proposed and final regulations discuss the amendments to these regulations in the same paragraph in which they discuss § 3.14(a). *See* 50 Fed. Reg. 51693; 52 Fed. Reg. 2931.

[22] *See DeLeon-Holguin v. Ashcroft*, 253 F.3d 811, 814 (5th Cir. 2001) ("'The purpose of the filing requirement is to allow immigration courts to manage the vast number of cases that are litigated before them each year. Allowing proceedings to commence at whatever point the INS decides to serve a charging document on an alien would frustrate this purpose and further ensnarl the bureaucratic web of immigration proceedings.'" (quoting *Morales-Ramirez v. Reno*, 209 F.3d 977, 981–82 (7th Cir. 2000))).

the INS, and today, the ICE) authority over the same, which the Service may independently

exercise before, but not after, the filing.[23] Thus, the filing marks an agency internal boundary—a

point in time as the case channels through the administrative process—between two sub-

agencies' (the immigration court versus the INS/ICE) exercise of their respective authorities over

the case. Put another way, "jurisdiction" as used in this regulation simply means the transfer of

control over the deportation case. This interpretation is further supported by Subsection (b) of

Regulation 1003.14, then § 3.14(b). Whereas prior to the filing event, the DHS (then INS) has

the "initial jurisdiction over an asylum application," 8 C.F.R. § 208.2(a); *see also* 8 C.F.R. §

208.1 (1983), "[w]hen an Immigration Judge has jurisdiction over an underlying proceeding, sole

jurisdiction over applications for asylum shall lie with the Immigration Judge." 8 C.F.R. §

1003.14(b); *see also* 52 Fed. Reg. 2937 (codified as 8 C.F.R. 3.14(b)).

Thus interpreted, Regulation 1003.14(a), a procedural rule, is not a grant of authority and

does not otherwise "connote subject-matter jurisdiction," *see Rockwell Int'l Corp. v. United*

*States*, 549 U.S. 457, 467 (2007), or speak to the immigration judges' "subject-matter

jurisdiction" over removal proceedings, *cf. Stern v. Marshall*, 564 U.S. 462, 479–80 (2011)

(statutory allocation of the authority to enter final judgment between the bankruptcy court and

the district court "does not implicate questions of subject matter jurisdiction." (citing 28 U.S.C.

§§ 157(b)(1), (c)(1))); *Bowles*, 551 U.S. at 212 ("We have repeatedly held that this statute-based

filing period for civil cases is jurisdictional. . . . On the other hand, we have treated the rule-

based time limit . . . differently, stating that it may be waived because the procedural rules

adopted by the Court for the orderly transaction of its business are not jurisdictional and can be

---

[23] *See In re G-N-C-*, Int. Dec. 3366, 22 I. & N. Dec. 281, 284 (BIA 1998) ("This language [in 8 C.F.R. § 239.2(a), (c) (1998)] marks a clear boundary between the time prior to commencement of proceedings, where a Service officer has *decisive power to cancel proceedings*, and the time following commencement, where the Service officer merely has *the privilege* to move for dismissal of proceedings." (emphasis added)), *abrogated on other grounds by Castro-Cortez v. INS*, 239 F.3d 1037 (9th Cir. 2001).

relaxed by the Court in the exercise of its discretion." (citations, brackets, and internal quotes omitted)). Instead, it *invokes* the already-endowed statutory authority of the immigration judges to conduct removal proceedings. *Cf. Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 555 (2017) (holding 12 U.S.C. § 1723a(a), Fannie Mae's sue-and-be-sued clause, "is most naturally read not to grant federal courts subject-matter jurisdiction over all cases involving Fannie Mae but to permit suit in any state or federal court already endowed with subject-matter jurisdiction.").

Moreover, a separate regulation that specifically provides for the immigration judges' authority to conduct removal proceedings suggests that § 3.14(a), and by extension its successor Regulation 1003.14(a), are not jurisdictional and do not otherwise condition the statutory grant of authority to the immigration judges. *Cf. United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015) ("Whereas § 2401(b) houses the FTCA's time limitations, a *different section . . .* confers power on federal district courts to hear FTCA claims. Nothing conditions the jurisdictional grant on the limitations periods, or *otherwise links* those separate provisions. Treating § 2401(b)'s time bars as jurisdictional would thus *disregard the structural divide* built into the statute." (emphasis added)). Under the sub-heading "authority," that regulation provides that "[i]n any removal proceeding pursuant to section 240 of the Act, the immigration judge shall have the *authority* to[] . . . [d]etermine removability pursuant to section 240(a)(1) of the Act; to make decisions, including orders of removal as provided by section 240(c)(1)(A) of the Act." 8 C.F.R. 1240.1(a) (emphasis added). The predecessor to this regulation, 8 C.F.R. § 242.8(a),[24] was promulgated to "[i]nterpret or apply Secs. 242 . . . ; 8 U.S.C. 1252," 21 Fed. Reg. 97, 98

---

[24] *See* 8 C.F.R. § 242.8(a) (1957) ("Special inquiry officers-(a) *Authority.* In a proceeding conducted under this part, the special inquiry officer shall have the *authority* to determine deportability and to make decisions including orders of deportation as provided by section 242 (b) of the act . . . ." (emphasis added)); *see also* 8 C.F.R. § 242.8(a) (1983) (same).

(Jan. 6, 1956), and was in the book long before § 3.14 was promulgated. Yet, the administrative notices of the proposed and final regulations, *see* 50 Fed. Reg. 51693; 52 Fed. Reg. 2931, made no mention of Section 242.8(a) in their discussion of § 3.14(a).[25]

Finally, to accept that Regulation 1003.14(a)—a rule that was not promulgated to interpret any statute—speaks to or conditions the immigration judge's subject matter jurisdiction is to say that the Attorney General is "in effect, . . . *telling himself* what he may or may not do." *See Garcia v. Lynch*, 786 F.3d 789, 797 (9th Cir. 2015) (Berzon, J. concurring). But "subject matter jurisdiction" of an agency is an "*external* constraint" placed upon the agency, not one that is imposed or created by the agency itself. *See id.* ("[P]resumably, [the Attorney General] could simply change the rules if he were so inclined. That being the case, such regulations are more like a court's internal rules, such as our own standing orders, than external constraints that could properly be conceived of as jurisdictional."); *see also* Black's Law Dictionary 980 (10th ed.2014) ("Rules of jurisdiction in a sense speak from a position *outside* the court system and prescribe the authority of the courts *within* the system." (quoting Fleming James Jr., Geoffrey C. Hazard Jr. & John Leubsdorf, Civil Procedure § 2.1, at 55 (5th ed. 2001) (emphasis added)).

In sum, the Court holds that Regulation 1003.14(a) does not grant, speak to, or condition the immigration judges' "subject matter jurisdiction" (*i.e.*, statutory authority) to conduct removal proceedings. It further holds that the IJ's removal order was not invalid or void for want of subject matter jurisdiction—because the NTA, as a charging document, omitted the hearing time.[26]

---

[25] Indeed, the notices—in their entirety—makes only a single *en passant* reference to § 248.1(a) when they discuss a change-of-venue provision. *See* 50 Fed. Reg. 51695; 52 Fed. Reg. 2932–33.

[26] The following analogy may be helpful. The filing of an NTA for purposes of Regulation 1003.14(a) parallels that of an indictment in a criminal proceeding: the NTA and indictment each serves the charging function, and the Service's role in commencing a deportation proceeding is "akin to" the

**B. The Prior Removal Proceeding Complied with 8 U.S.C. § 1229(a)(1) and Regulation 1003.14(a).**

Having addressed the question what "jurisdiction vests" means, the Court turns to Defendant's arguments premised on § 1229(a)(1) and Regulation 1003.14(a). Because the NTA omitted the hearing time, he argues, it did not comply with § 1229(a)(1), and consequently, the IJ's removal order was invalid. Mot. to Dismiss at 2 (citing *Pereira*, 138 S. Ct. 2105). He contends that the statutory definition, not the regulatory definition, of an NTA governs the application of Regulation 1003.14(a). Def.'s Reply at 4–5. Again because the NTA omitted the hearing time, he argues, "jurisdiction" did not vest and the 2002 removal proceeding did not commence before the IJ under Regulation 1003.14(a). Mot. to Dismiss at 3. Consequently, the IJ's removal order was illegal. *Id.* at 3.

The Court assumes, without deciding, for purposes of Regulation 1003.14(a), that an NTA as a charging document must comply with the statutory definition under § 1229(a). *See* 8 C.F.R. § 1003.15 (requiring a "notice to appear" to include all of the statutory categories of

---

Attorney General's role in commencing a criminal proceeding in federal court. *See Johns*, 653 F.2d at 889 (The Attorney General's (as when the INS was an agency within the DOJ) "responsibility in this regard is *akin* to his responsibility for enforcing the criminal laws: in both situations, he has discretion to refrain from instituting proceedings even though grounds for their commencement may exist." (emphasis added)). In the latter context, the Supreme Court has stated that "a district court has [subject matter] jurisdiction of all crimes cognizable under the authority of the United States" and held that "a ruling that the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment." *Cotton*, 535 U.S. at 630–31 (internal quotation marks and citation omitted).

Moreover, even assuming that § 1229(a)(1)'s hearing time requirement must be met for purposes of Regulation 1003.14(a), Defendant cites no binding authority, and the Court finds none, that holds that the statutory time requirement is jurisdictional. *See also Hernandez-Perez v. Whitaker*, --- F.3d ----, 2018 WL 6580478, at *4 (6th Cir. 2018) ("The statutory text does not . . . denote which of the several requirements for NTAs listed in § 1229(a)(1) are jurisdictional."); *cf. Rockwell Int'l Corp.*, 549 U.S. at 467–68 ("we concluded . . . establishing the elements of an offense was not made a jurisdictional matter merely because the statute creating the cause of action was phrased as providing for 'jurisdiction' over such suits." (discussing *Steel Co.*, 523 U.S. 83)).

information, except the time of hearing). It nevertheless is not persuaded by Defendant's arguments.

Prior to *Pereira*, the Fifth Circuit held that a served NTA that omits the date and time of the removal hearing and a subsequently served NOH that supplies the omitted information *together* (often referred to as the "two-step notice procedure"[27]) comply with § 1229(a)(1). *E.g.*, *Mehdi v. Gonzales*, 216 F. App'x 412, 413–14 (5th Cir. 2007) (unpublished) (holding that the NTA that omitted the hearing date and time and the NOH "combined to satisfy the statutory requirements of written notice" and rejecting an argument that the NTA "deprived the immigration court of jurisdiction"); *Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009) ("[A]n NTA need not include the specific date and time of a removal hearing in order for the statutory notice requirements to be satisfied; that information may be provided in a subsequent NOH." (citing *Mehdi*)). Several other appellate courts came to the same conclusion. *E.g.*, *Haider v. Gonzales*, 438 F.3d 902, 907–08 (8th Cir. 2006) (*per curiam*) ("Our reading of the INA and the regulations compels the conclusion that the NTA and the NOH, which were properly served . . . , combined to provide the requisite notice."); *Popa v. Holder*, 571 F.3d 890, 896 (9th Cir. 2009) ("[T]he NTA and the hearing notice combined provided Popa with the time and place of her hearing, as required by 8 U.S.C. § 1229(a)(1)(G)(i)."); *Herrera-Orozco v. Holder*, 603 F. App'x 471, 473–74 (4th Cir. 2015) ("[S]ervice of an NTA that indicates that the date and time of a hearing will be set in the future, followed by successful service of a separate notice specifying the precise date and time of the hearing, satisf[ies] the notice requirements of [§ 1229(a)(1)].)").

Defendant contends that *Pereira* abrogated *Gomez-Palacios* and *Mehdi*. Mot. to Dismiss at 3 n.3. For several reasons, the Court disagrees. In *Pereira*, the Supreme Court did not have

---

[27] *In re Bermudez-Cota*, 27 I. & N. Dec. 441, 445 (BIA 2018).

the occasion to address, nor did it address, the precise issue resolved by the Fifth Circuit decisions: whether a served NTA *and* a subsequently served NOH together comply with § 1229(a)(1)'s hearing time requirement. Indeed, "Pereira *never* received notice of the time and date of his removal hearing." *Pereira*, 138 S. Ct. at 2113 (emphasis added).

Second, nothing in *Pereira* counsels against the two-step notice procedure endorsed in *Gomez-Palacios* and *Mehdi*. Although a dialogue between the *Pereira* majority and dissent over complete/incomplete NTAs gives us a pause, *see e.g.*, *United States v. Sandoval-Cordero*, No. EP-18-CR-2370-KC, 2018 WL 6253251, *5 (Nov. 29, 2018) (concluding that the *Pereira* Court rejected the two-step approach), read in context, the dialogue reveals no explicit or implicit rejection by the majority of the two-step procedure. In that dialogue, the *Pereira* majority rejected dissenting Justice Alito's argument that "§ 1229(a)(1)'s language can be understood to define what makes a notice to appear *complete*." *Pereira*, 138 S. Ct. at 2116 (citing *id.* at 2126–27) (italics in original)). But, that argument, as explained below, is distinct from the issue resolved by *Gomez-Palacios* and *Mehdi*.

Specifically, Justice Alito argued that the Government's interpretation in *Matter of Camarillo*, 25 I. & N. Dec. 644 (2011), can be squared with the text of § 1229(a)(1), which he quoted as follows: "'a written notice (*in this section referred to as a 'notice to appear'*) shall be given in person to the alien . . . specifying' 10 categories of information, including the 'time and place' of the removal proceeding." *Pereira*, 138 S. Ct. at 2126 (citing § 1229(a)(1)) (emphasis in original)). He posited that it is at least reasonable (as an alternate plausible interpretation) to read that language "as simply giving a name to the new type of notice to which that provision refers." *Id.* "[T]o put another way," he argued, "§ 1229(a)(1)'s language can be understood to define what makes a notice to appear *complete*," *id.* (citing *In re Camarillo*, 25 I. & N. Dec. at

647).[28] Under that interpretation, according to Justice Alito, "a notice to appear that omits the date and time of a proceeding *is still* a notice to appear (albeit a defective one)," *i.e.*, "an incomplete notice to appear" that "triggers the stop-time rule." *Id.* at 2127 (emphasis added).[29] In other words, according to Justice Alito, an NTA that omits the date and time of a proceeding—by *itself*—satisfies § 1229(a)(1) for purposes of the stop-time rule. But *Gomez-Palacios* and *Mehdi* held that *two* documents (an NTA lacking the hearing time and a NOH)

---

[28] In *Matter of Camarillo*, which involved the application of the "stop-time" rule, the respondent was served with an NTA lacking the date and time of the removal hearing and was later served with a NOH. The immigration judge below held that the language "under section 239(a)," *i.e.*, 8 U.S.C. § 1229(a), "mandates that a notice to appear must comply with *all* of the provisions of section 239(a)(1)" to trigger the "stop-time" rule. *In re Camarillo*, 25 I. & N. Dec. at 647 (emphasis added). Based on that reasoning, in turn, the judge held that "two documents, the notice to appear and the notice of hearing, combine together to comprise the requisite service of a notice to appear under section 239(a) of the Act"—*i.e.*, the two-step notice procedure. *Id.* at 648. The immigration judge "concluded that the 'stop-time' rule did not apply *until* the respondent was sent the notice of hearing specifying the date and time of her hearing," *id.* at 647 (emphasis added).

On review, the BIA rejected the immigration judge's views:

An equally plausible reading, however, is that the reference in section 240A(d)(1) [the "stop-time" rule] to a notice to appear "under section 239(a)" is simply *definitional*, that is, it indicates what the words "notice to appear" refer to. Read this way, section 240A(d)(1) merely specifies the document the DHS must serve on the alien to trigger the "stop-time" rule and does not impose substantive requirements for a notice to appear to be effective in order for that trigger to occur.

*Id.* at 647; *see also id.* at 648 (rejecting the two-step procedure).

To the extent that BIA's position and in turn, Justice Alito's, were rejected by the *Pereira* majority, *Pereira*, 138 S. Ct. at 2111–12, but the immigration judge's position on the meaning of "under section 239(a)," *i.e.*, § 1229(a)," aligns comfortably with that of the majority (at least for § 1229(a)'s hearing time requirement), it may be said that the two-step notice process, endorsed by the immigration judge, but rejected by the BIA, is consistent with *Pereira*. *See also Hernandez-Perez*, --- F.3d ----, 2018 WL 6580478, at *4 ("[T]he BIA's conclusion that "a two-step notice process is sufficient to meet the statutory notice requirements" is *not inconsistent* with the text of the INA." (discussing *In re Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (BIA 2018) (emphasis added)).

[29] *See also id.* at 2116 (majority) ("In the dissent's view, a defective notice to appear *is still* a 'notice to appear' even if it is incomplete—much like a three-wheeled Chevy is still a car." (emphasis added)).

-20-

*together*—not, as Justice Alito argued, one document (an NTA lacking the hearing time) *alone*—satisfy § 1229(a)(1).[30]

Finally, though there is a dearth of appellate decisions interpreting or applying *Pereira*, two recent decisions, including one by the Fifth Circuit, suggest that the pre-*Pereira* line of cases that endorsed the two-step notice procedure survives to date. Recently, the Sixth Circuit reaffirmed its holding in a pre-*Pereira* decision that, like *Gomez-Palacios* and *Mehdi*, had endorsed the two-step notice procedure, *see Hernandez-Perez*, --- F.3d ----, 2018 WL 6580478, at *3 (discussing *Herrera-Orozco*, 603 F. App'x 471, *supra*). Recognizing "*Pereira*'s emphatically 'narrow' framing," the Sixth Circuit concluded that "jurisdiction vests with the immigration court where, as here, the mandatory information about the time of the hearing is provided in a Notice of Hearing issued after the NTA." *Id.* at *5 (citing 8 U.S.C. § 1229(a)). Similarly, the Fifth Circuit has recently distinguished *Pereira*, approvingly citing lower court opinions in which the courts have declined "to read *Pereira* as applying more broadly than in stop-time rule cancellation cases." *Mauricio-Benitez v. Sessions*, --- F.3d ----, 2018 WL 5839696, at *3 n.1 (5th Cir. 2018). *Mauricio-Benitez* thus suggests that the *Gomez-Palacios–Mehdi* holding on the two-step notice procedure remains good law.

Accordingly, bound by the Fifth Circuit precedents, the Court holds that the 2002 removal proceeding's NTA and NOH together complied with § 1229(a)(1)'s time-of-the-hearing requirement. It further holds that jurisdiction (as interpreted in Part II.A, *supra*) properly vested and the proceeding properly commenced under Regulation 1003.14(a) on August 3, 2002, when

---

[30] Moreover, by stating that § 1229(a)(1) "does not say a 'notice to appear' is 'complete' when it specifies the time and place," *Pereira*, 138 S. Ct. at 2116, the majority appears to mean simply that, contrary to his assertion, Justice Alito's arguments find no textual support in § 1229(a)(1)—a charge the majority repeats throughout the opinion, *e.g.*, *id.* at 2113 n.5; *id.* at 2115 n.7; *id.* at 2119. That statement does not speak to the two-step notice procedure.

the NOH was served on Defendant. Consequently, the Court concludes that the 2002 removal order was not invalid because the NTA did not include a hearing time.

## C. Defendant Fails to Satisfy the Requirements of 8 U.S.C. § 1326(d)

Defendant's § 1326 arguments are premised on his earlier argument that because the NTA failed to provide a hearing time, the IJ lacked jurisdiction, subject matter jurisdiction, and/or authority to issue the 2002 removal order, and therefore, that the removal order was a legal nullity, void, and/or void *ab initio*. Mot. to Dismiss at 8–10. Based on that premise, he argues that he was never "removed," and therefore the Court should dismiss the Indictment for failing to state a claim. *Id.* Based again on the same premise, he argues that he need not satisfy all three prongs of the three-prong tests under 8 U.S.C. § 1326(d), and in any event, he satisfies them. *Id.* at 9–10; Def.'s Reply at 14.

As discussed above, *see* Part II.A–B, the Court has rejected Defendant's underlying premise. So, the Court rejects these arguments as well. However, out an abundance of caution, the Court briefly addresses the first two prongs of the test. *See United States v. Mendoza-Mata*, 322 F.3d 829, 832 (5th Cir. 2003) ("If the alien fails to establish one prong of the three[-]part test, the Court need not consider the others."). To challenge to the underlying removal order, an alien-defendant must demonstrate that: "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the [removal] proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

The Government points out, and Defendant does not dispute, that he did not appeal the 2002 removal order to the BIA. Rather, he affirmatively waived appeal of the order. Gov't's Resp., Ex. I. On these facts, the Court holds that he fails to satisfy the first two prongs of §

1326(d). *See United States v. Zapata-Cortinas*, No. SA-18-CR-00343-OLG, 2018 WL

6061076, at *11, 13 (W.D. Tex. Nov. 20, 2018) (holding that defendant failed to satisfy the first

two prongs, because he voluntarily waived his right to appeal the removal order to the BIA and

denying defendant's motion to dismiss indictment). The Court concludes that Defendant fails to

satisfy § 1326(d).

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's "Motion to Dismiss"

(ECF No. 26) is **DENIED**.[31]

So ORDERED and SIGNED this 21ST day of December 2018.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

---

[31] To the extent that the Court has not explicitly addressed any argument raised by Defendant, the
Court has considered it and finds it unpersuasive.